## Case No. 14,518.

### UNITED STATES v. BARKER.

[2 Paine, 340.] [1]

Circuit Court, S. D. New York. 1823.

BILL OF EXCHANGE—NOTICE OF DISHONOR—WHEN TO BE GIVEN—DISCHARGE OF ENDORSER.

1. Where the United States were the holders of a bill of exchange, and their agent in New York was directed by a letter from the secretary of the treasury, dated at Washington, Dec. 7, 1814, enclosing the protest for non-acceptance, with directions to give notice thereof to the drawer and endorsers residing in New York, and the agent received the letter on Saturday the 10th of Dec., between 11 and 12 o'clock, and notice of the dishonor of the bill was given by him on Monday the 12th; it was held, that the drawer was discharged by the negligence of the holders.

2. The rule that each party has an entire day after that on which he is informed of the dishonor of a bill, to give notice to the party to whom he looks for payment, applies to a party who has an interest in the bill, and not to an agent employed by such party to give the notice.

[Error to the district court of the United States for the Southern district of New York.]

THOMPSON, Circuit Justice. This case comes up by writ of error to the district court for the Southern district of New York, and the only question raised and argued was, whether due notice of the non-acceptance of the bill in question was given to the defend-

1 [Reported by Elijah Paine, Jr., Esq.]

ant, the drawer [Jacob Barker]. [2] The letter of the secretary of the treasury addressed to Flewelling, inclosing the protest for non-acceptance, with directions to give notice thereof to the drawer and endorsers, was dated on the 7th of December, 1814, at the city of Washington; and if put into the mail of the next day, (the 8th,) would, according to the course of the mail, arrive here on the 10th. And for the purpose of the question now before the court, it must be taken for granted that the letter containing the protest, and directing notice to be given to the drawer and endorsers, was received by Flewelling on the 10th of December, between eleven and twelve o'clock. But the notice of the dishonor of the bill was not given until the 12th.

I do not understand any objection to have been made to the regularity of the notice of non-payment, nor is it necessary to notice that point here.

This case is not distinguishable in any respect as to facts from that of U. S. v. Bar-

---

2 The notice of non-payment must contain the exact amount, and must be directed on its face to the person sought to be charged; it is not sufficient to have it directed correctly on the outside. Remer v. Downer, 23 Wend. 620. See further report of this case, 25 Wend. 277. Service of notice of protest cannot be made through the mail, where the party giving it and the one to whom it is sent reside in the same village. Sheldon v. Benham, 4 Hill, 129; Ransom v. Mack, 2 Hill, 587; Cayuga County Bank v. Bennett, 5 Hill, 236. It is a sufficient compliance with the statute (2 Rev. St. p. 212, § 46, note e) to state in the certificate of the notary that notice was served, &c., by putting the same in the post-office, without mentioning by whom the service was made. Ketchum v. Barber, 4 Hill, 224. Nor need the certificate now (Sess. Laws 1835, p. 152) mention the reputed place of residence of the party notified, nor the post-office nearest to it. Id. Where a notice of protest was sent per mail to a town designated by the agent who procured the discount of a note at a bank, in answer to an inquiry made by a cashier at the time of the discount, such notice was held sufficient, although there happened to be four post-offices in the town, and the post-office of the name or the town was nine miles distant from the residence of the endorser, while another post-office in the same town was kept at the very place where he resided. Catskill Bank v. Stall. 15 Wend. 364. Notice of non-payment must be served on each of several endorsers, if they are not partners. Willis v. Green. 5 Hill, 232. See Bank of Chenango v. Root, 4 Cow. 126. If one of such endorsers die before the note falls due, it seems no recovery can be had against the survivor, without allowing that the estate of the co-endorser was served with notice. Id. But, where the surviving endorser, after the note fell due, took from the maker a bond and warrant of attorney to secure his liability on the note, and subsequently collected a part of the amount; held, an admission of his liability, and that proper steps had been taken by the holder to charge him. Id. It is not necessary to the support of an action against an endorser of a bill of exchange, that notice of non-acceptance should be accompanied with a copy of the bill and protest; notice alone is sufficient. Wells v. Whitehead, 15 Wend. 527. A defendant is not allowed to object to want of diligence in giving notice of non-acceptance, in respect to the place to which the notice is directed, when sent by mail, if the

ker (decided at the last term of the supreme court) 12 Wheat. [25 U. S.] 559. And the law of that case must of course apply to and govern this. A question, however, growing out of those facts, has been made here, which does not seem to have attracted the attention of the counsel or the court, according to the report of that case. It appears that the 10th of December, when the letter of the secretary of treasury was received here by Flewelling, was on Saturday, and that notice was given on Monday, (the 12th,) and this, it has been argued, was all that the law required of the holder.

This question does not appear to have been made in that case on the trial in the court below; and I have no recollection of its having been at all started on the argument in the supreme court. If it had been, the opinion of the court would, doubtless, have been expressed upon it. And it is hardly to be presumed that if this circumstance would have furnished an excuse for the delay in giving notice, it would have escaped the notice of the bar and of the bench. But if this should be considered a new point, undecided

by that case, it would not, I think, affect the question; the notice was still too late—it should have been given on Saturday—the letter was received here early enough on that day by the agent, to enable him to have given the notice within the usual business hours, without any extraordinary diligence. Mr. Flewelling could not, in any sense, be considered the holder of this bill, or having any interest in it; he was the mere private agent of the plaintiffs, who must be deemed the holders, and chargeable with all the legal consequences resulting from the negligence of their agents.

A notice put into the mail at Washington, directed to the defendant at New York, would have been sufficient: and all that could have been required of the plaintiff; they were not bound to employ an agent here to serve the notice. And had notice been sent by the mail directly to defendant, it would, doubtless, have been received by him on Saturday. The delay, therefore, in bringing the notice home to the defendant, is attributable to the plaintiffs. Although notice by the mail would have been sufficient, the plaintiffs were not

---

evidence of diligence is prima facie sufficient, and there be no proof, on his part, that the notice was sent to a wrong place. Id. Where a note was payable after ten days' notice, and notice was given. and before the expiration of the ten days the endorser of the note promised to pay it: held, that the endorser was estopped from alleging want of demand, and notice of non-payment. Leonard v. Gary, 10 Wend. 504. A notice of protest to an endorser, that the note of A. B. endorsed by him is protested for non-payment, is sufficient to put him on inquiry; and the jury are authorized to find a verdict against him, if they are satisfied the endorser was not misled by the notice. Bank of Rochester v. Gould, 9 Wend. 279. It is sufficient evidence of demand of payment, and of refusal to pay a note payable at a particular place, if the note be left there, and no funds are provided to take it up. Nichols v. Goldsmith, 7 Wend. 160. The memorandum of a deceased cashier of a bank, who frequently notified endorsers of non-payment of notes in the name of the acting notary of the bank, that on a certain day he sent notice by mail to an endorser, was held to be competent, and prima facie sufficient evidence to charge the endorser. Id. Notice of protest sent to a town where a note bore date, where the officers of the bank were told by the person who presented it for discount, the endorser resided. and where he did reside until within a few weeks before the date of the note, is sufficient to charge the endorser. Bank of Utica v. Davidson, 5 Wend. 587. Where an endorser resided in one town within two and a half miles of a post-office, and carried on business in another town where there was also a post-office, at the distance of four and a half miles from his residence, and he received letters and kept a postage account at the latter office; held, that notice of protest of a note might be sent to either place. Bank of Geneva v. Howlett, 4 Wend. 328. A mistake in the name of the post-office to which a notice of protest is directed, does not render the notice inoperative, where it appears that the post-office is as well known by one name as the other. Id. Where a notice of protest has been directed to an endorser at a wrong place, the question whether due diligence was previously used in endeavoring to ascertain his residence. belongs to the court as matter of law, and not to the jury, provided there be no dispute about the facts. Spencer v. Bank of Salina, 3 Hill, 520; Ireland v. Kip, Anth. N. P.

195, 10 Johns. 490, 11 Johns. 231. Where a notary, who had thus misdirected notice to an endorser, testified that he previously made ineffectual inquiry of persons in the bar-room of an hotel, and of others whom he either met at the post-office or in the street. but was unable to give the names of any of them; held, not evidence of due diligence, especially as it appeared that a more thorough inquiry would have proved effectual. Spencer v. Bank of Salina, 3 Hill, 520. The question as to the extent of the inquiry requisite in such cases, discussed and considered. Id. The holder of a dishonored note is excused from giving notice of non-payment to the endorser on the 4th of July. Cuyler v. Stevens, 4 Wend. 566. Notice of non-payment may be either verbal or in writing. Id. In an action against the drawers of a bill, dishonored by the drawees, but accepted by third persons supra protest for the honor of the drawers, payment must be demanded of the drawees, and notice of non-payment given. Schofield v. Bayard, 3 Wend. 488. Where information of the dishonor of a bill is sent to an agent who is not a party to the bill, for the purpose of collection, with a request to give notice to the drawers, and he omits to give such notice until the next day after receiving such information, the drawers are discharged; being a mere agent, he should have given immediate notice. Sewall v. Russell. Id. 276. Notice of non-acceptance of a bill cannot be given by a stranger; it must be by a party to it, or by one who, on the bill being returned to him, would have a right of action upon it. Chanoine v. Fowler. Id. 173. The holder of a note, who receives and endorses it for the sake of collection only, although a mere agent, is to be considered as the real holder, for the purpose of receiving and transmitting notices. Ogden v. Dobbin, 2 Hall. 112. When a note has been presented for payment. and it is refused, the holder acts with reasonable diligence if he gives notice by the regular course of mail, to the endorser from whom he received it, that he may transmit notice to his immediate endorser, who may take the same as to the prior endorsers, and so on. Id. An action does not lie against a notary for the omission of notice of protest to an endorser. where the holder may resort to other grounds for fixing the endorser independent of the notice, and wilfully or negligently omits to avail himself of such facts. Franklin v. Smith, 21 Wend. 624. It seems, however, that in such

bound to adopt that mode, but might cause it to be given by a private hand; but the rule seems to be well settled in England, that when such course is adopted, the holder is bound to see that it reaches the party on the same day that it would have arrived by the post. Chit. 402, 288, and note; 6 East, 3.

The rule which we find laid down in the books, that each party has an entire day after that on which he is informed of the dishonor of a bill, to give notice to the party to whom he looks for payment, must be a party to the bill, and who has an interest in it, and cannot apply to an agent employed by such party to give the notice. If Flewelling had been a party to this bill, he might, according to this rule, have had until Monday the 12th to give the notice; but the plaintiffs could not claim a day for their agent to give this notice, after it arrived here. Such a rule might lead to great delay and abuse by employing a number of agents in succession to give such notice, if each one was entitled to a day for that purpose.

This rule in England seems to have received some modification, with respect to bankers

employed to collect bills. In Haynes v. Birks, 3 Bos. & P. 599, it was said, that as soon as a banker is informed of the non-payment of a bill, it becomes his business to acquaint his principal of that circumstance, and that if a bill be returned to a banker, he is bound to give notice to his principal that very day, if he can do so by using ordinary diligence. But by subsequent cases the rule seems now to be otherwise, and a banker is considered a distinct holder, though he is possessed of the bill merely to receive payment for a customer. But it may be inferred from what fell from Lord Ellenborough in one of the cases, that it is the custom of bankers to present the bills as distinct customers, and not as mere agents identified with their customers. 2 Taunt. 388; 15 East, 291. This cannot, however, affect the question in this case, for there is no pretence that Flewelling was, in point of fact, or that he professed to be, anything more than a mere agent, acting for and in the name of the plaintiffs.

The judgment of the court below must, therefore, be affirmed.[3]

[See Case No. 14,519.]

---

case, the holder of the note should not only be well apprized of the existence of the facts to which resort might be had to sustain the action against the endorser, but that he should have some intimation that the validity of the notice would be questioned. Id. Notice of non-payment sent per mail to the place designated by the drawer of an accommodation bill of exchange, for whose benefit the bill was discounted, as the residence of the endorser is sufficient to charge the endorser, although he in fact reside in another town, and receives his papers at a post-office in still another town. Bank of Utica v. Bender, 21 Wend. 643. All that can be required of the holder of paper in such case is, reasonable diligence in making inquiry as to the residence of the endorser; and the holder in this case having received information from an individual in whom the endorser reposed so much confidence as to become his surety for the payment of a debt, it was held that he had done all that could be demanded of him. Id. What is reasonable diligence in cases of this kind. Id. A., residing at New York, having ordered goods of B., residing at Birmingham, in England, sent to B., on account of the goods, a bill drawn by C. in New York, upon D. in London, payable to the order of B., at sixty days sight, but not endorsed by A. B. placed the bill in the hands of his bankers at Birmingham for collection, who transmitted the same to their correspondents in London, by whom the bill was presented for acceptance to D., who refused to accept; but no notice of the non-acceptance was given to B. until the day of payment, when the bill was presented for payment and dishonored. B. transmitted the bill to A., requested payment of the amount, and apprized him of the circumstances in relation to the bill. A. refused to make payment, returned the bill, and insisted he was discharged from liability to make payment, in consequence of not having had due notice of the non-acceptance. In assumpsit by B. against A., to recover the amount of the bill, for which A. was in advance at the drawing of the same, it was held, on a case made, containing the above facts, that A. not having endorsed the bill, was not entitled to notice of dishonor, and remained liable to B. for the amount of the goods; that C., the drawer, not having funds in the hands of D., and the circumstances not being such as to induce a reasonable expectation that the bill would be accepted, was likewise not entitled to notice;

that the bill was not received as an absolute payment, and that B., in relation to it, stood in the character of agent to A., and having placed it, according to the ordinary course of business, in the hands of bankers for collection, and having apprized A. of the non-acceptance and non-payment as soon as he received notice himself, was not chargeable with a want of diligence or fidelity, in the discharge of his trust as an agent; that whatever might be the effect of the laches of the bankers, in an action against them by B., or by A., had he endorsed the bill, such laches had no bearing upon the rights of B.; and, therefore, that B. was entitled to judgment. Wart v. Smith, 1 Wend. 219. Notice of non-payment of a bill of exchange, &c., must generally be given by an endorser to the endorser next before him, by the next post after he has himself received notice of the dishonor, and so on to the drawer. Mead v. Engs, 5 Cow. 303. Notice in such cases need not be on the same day, but may be on the next. Howard v. Ives, 1 Hill, 263. One dealing in bills or notes is not bound to watch the post-office constantly for the purpose of receiving and transmitting notices. Mead v. Engs, 5 Cow. 303. Reasonable diligence and attention is all the law exacts. Id. Accordingly, where R., residing at Bristol, Rhode Island, October 21st, sent notice of non-payment of an inland bill to S., his immediate endorser, at Providence, by the post which reached that place on the same day at 5 p. m., and S. received the notice on the morning of the 22d, and put a notice in the post-office in the afternoon of the same day, for his endorser at New York, although a mail had previously left Providence at 1 p. m. of the same day for New York; and this letter was post-marked the 23d, and was taken by the post of that day, in the morning, and reached the endorser at New York, in the due course of mail, there being no laches imputed after this; held, that the drawer was not discharged. Id. Where a notary at New York, ignorant of the residence of an endorser, sent a notice of protest for him to K. & D. at Albany, by whom it was received in due course of mail, and then deposited in the post-office, directed to the endorser at his place of residence; held, sufficient to charge the endorser, there being no pretence that it was too late. Safford v. Wyckoff, 1 Hill, 11.

[3] See U. S. v. Barker [Case No. 14,517]; Clement's Ex'rs v. Dickey [Id. 2,883].